

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 17, 1993

Mr. David U. Flores
Williamson County Auditor
P.O. Box 506
Georgetown, Texas 78627

Opinion No. DM-276

Re: Whether a county's single-employer, self-funded medical benefit plan is subject to certain provisions of the Insurance Code, and related questions    (RQ-508)

Dear Mr. Flores:

You ask a number of questions relating to the Williamson County's (the "county") medical benefit plan. By way of background, you explain that the county "currently provides medical coverage to its employees through a single-employer, self-funded plan.... The [c]ounty has purchased stop-loss insurance to reimburse it in the event claims exceed a certain attachment point."[1] In addition, you state that the county is also "considering contracting with an entity which is more than 50 percent controlled by employer representatives and which has contracted with a select group of providers to provide services to contracting employers at preferred rates."

You begin by asking whether the county's medical benefit plan is subject to certain provisions of the Texas Insurance Code and, if so, whether those provisions are preempted by the federal Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 - 1461 ("ERISA"). First, we address whether article 1.24C, article 3.51-9, and article 21.53 of the Insurance Code apply to single-employer, self-funded plans.

Article 1.24C(a) states that the intent of this article is

to assure that adequate health insurance and benefits coverage is available to the citizens of this state, to assure that adequate health

---

[1]See Local Gov't Code § 157.002 (authorizing county to provide self-funded medical coverage); see also Attorney General Opinion JM-887 (1988) (addressing limits formerly applicable to Local Gov't Code § 157.002).

We make no comment on your statements that a single employer such as the county "is clearly not an insurer" and that the county's "purchase of stop-loss insurance ... does not make its plan subject" to the Texas Insurance Code provisions regarding group accident and health insurance.

> care is available to protect the public health and safety, and to ascertain the continuing effect of HIV and AIDS on health insurance coverage and health benefits coverage availability and adequacy in this state for purposes of meeting the public's health coverage needs.

Subsections (c) through (i) of the article require the State Board of Insurance (the "board") to gather and compile data on the effect of HIV and AIDS on health insurance coverage, and authorize the board to submit written recommendations for legislation to resolve problems associated with the impact of HIV and AIDS on the availability health insurance coverage. In article 1.24C, "health insurance coverage" is defined to mean "any group policy, contract, or certificate of health insurance or benefits delivered, issued for delivery, or renewed in this state by an insurance company . . . , a group hospital service corporation . . . , a health maintenance organization . . . , and *any self-insurance trust or mechanism providing health care benefits.*" Ins. Code art. 1.24C(b)(2) (citation omitted) (emphasis added).

You ask whether the italicized language would include a single-employer, self-funded plan such as the county's within the ambit of the article. You suggest that because the Insurance Code generally applies only to insurance companies, group hospital service corporations, and health maintenance organizations and that the Department of Insurance's regulatory authority is generally limited to these industries, the legislature could not have intended for article 1.24C to apply to single-employer, self-funded plans. As will be seen below, the legislature on a number of occasions has expressly made provisions of the Insurance Code applicable to self-funded plans. For this reason, and because a single-employer, self-funded plan is clearly a "mechanism providing health care benefits," we conclude that article 1.24C applies to single-employer, self-funded plans such as the county's.[2]

Next, you ask whether article 3.51-9 applies to single-employer, self-funded plans. Article 3.51-9 requires various entities, including "all employer, trustee, or other *self-funded* or self-insured plans or arrangements transacting health insurance or *providing other health coverage or services*" to provide "benefits for the necessary care and treatment of chemical dependency that are not less favorable than for physical illness generally." *Id.* art. 3.51-9, § 2A(a) (emphasis added). Although this provision expressly

---

[2]You ask us to "confirm that the [c]ounty is not required to report to the Texas Department of Insurance with respect to its medical benefit plan." We assume you are asking about reports required by the State Board of Insurance (the "board") pursuant to its authority under article 1.24C. Clearly, article 1.24C authorizes the board to promulgate rules requiring single-employer, self-funded plans to submit information. *See* Ins. Code art. 1.24C(b)(2), (d). We make no comment on the statement that it is your understanding that the board is not currently requiring single-employer, self-funded plans to report information.

refers to self-funded plans, you suggest that it may only be designed to apply to multiple employer welfare arrangements ("MEWA's") "which, while being a collection of employee benefit plans, are insurance in the sense that risk is spread over several unrelated entities." The italicized language, however, makes clear that this provision applies not only to insurance plans but also to self-funded plans that provide "other health coverage or services." Therefore, we conclude that article 3.51-9 applies to single-employer, self-funded plans such as the county's.

In addition, you ask whether article 21.53, which governs dental care benefits in certain circumstances, applies to a single-employer, self-funded plan. Article 21.53 applies to a "health insurance policy" or "employee benefit plan" as defined by section 1, subsections (a) and (b). The term "employee benefit plan" means "any plan, fund or program heretofore or hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . through the purchase of insurance or otherwise, dental care benefits in the event of accident or sickness." The definition of "employee benefit plan" is broad and is clearly not limited to traditional health insurance plans. We conclude that article 21.53 applies to a single-employer, self-funded plan such as the county's to the extent it that it "was established or is maintained for the purpose of providing for its participants . . . dental care benefits in the event of accident or sickness."

You also ask whether ERISA preempts article 1.24C, article 3.51-9, and article 21.53 of the Insurance Code. You state that you understand "that ERISA preempts [these] provisions . . . as they apply to most single-employer, self-funded plans."[3] As you note, however, ERISA does not apply to "governmental plans," *i.e.*, plans established by governmental entities. *See* 29 U.S.C. §§ 1002(32) (defining the term "governmental plan" to include a plan established "for its employees" by "the government of any State or political subdivision thereof"), 1003(b)(1) ("The provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a governmental plan"). Nevertheless, you suggest that ERISA preempts these provisions of the Insurance Code as they apply to single-employer, self-funded governmental plans.

ERISA's preemption provision generally states that an employee benefit plan is not "an insurance company or other insurer, bank, trust company, or investment company or . . . engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." *Id.* § 1144(b). This preemption provision

---

[3]We do not consider whether ERISA preempts these provisions as they apply to plans other than those of governmental entities.

expressly excludes, however, employee benefit plans which are exempt under section 1003(b), which includes governmental plans. *See id.* In short, ERISA exempts governmental plans from its requirements, *id.* § 1003(b), and expressly provides that it does not preempt state laws which govern such plans, *id.* § 1144(b). Therefore, we conclude that ERISA does not preempt article 1.24C, article 3.51-9, and article 21.53 of the Insurance Code to the extent they apply to a single-employer, self-funded plan of a governmental entity such as the county.[4]

Next you ask us to "confirm [your] understanding" that article 3.51-6, section 3A and article 3.51-14[5] of the Texas Insurance Code "which arguably apply to single-employer, self-funded plans do not require employers to provide certain benefits." You suggest that these provisions "do not require employers to provide certain benefits, but rather require insurers, MEWA's and other sellers of employee benefit plans to offer to provide certain coverage, and the employer may or may not elect to provide this coverage to its employees."

Subsection (a) of section 3A of article 3.51-6 requires various insurers and plans to "*offer and make available* . . . coverage for services and benefits on an expense incurred, service, or prepaid basis for out-patient expenses that may arise from in vitro fertilization procedures" if the policy or plan "otherwise provides pregnancy-related benefits." Subsection (b) states that "[a]n offer made under Subsection (a) of this section is subject to this section." Subsection (c) provides that a "rejection of an offer to provide coverage for services or benefits provided by Subsection (a) of this section must be in writing."

In Attorney General Opinion JM-937 (1988), this office considered whether, under section 3A, in the context of a group policy, the group policyholder or the individual employee covered under the group policy has the right to reject coverage for in vitro fertilization. That opinion concluded that section 3A identifies the policyholder as the entity to which an offer for coverage for in vitro fertilization must be made. "Nowhere is it provided that individuals who are merely the beneficiaries under a policy of insurance issued to their employer have any right to reject such element of the group insurance coverage." Attorney General Opinion JM-937 at 5. That reasoning applies with equal force here.

Section 3A of article 3.51-6 states that coverage must be offered to "each group policyholder, contract holder, *employer*, multiple-employer, union, association, or

---

[4]You ask this office to "confirm our understanding that the [c]ounty is not required to report to the U.S. Department of Labor." As noted above, governmental plans are exempt from ERISA's requirements.

[5]Although you cite article 3.51-4, it is apparent that you intended to refer to article 3.51-14.

trustee." Ins. Code art. 3.51-6, § 3A(a) (emphasis added). It does not require that coverage be offered directly to an employee. Therefore, we conclude that section 3A requires a single-employer, self-funded plan to offer coverage for in vitro fertilization procedures to the employer.[6]

Article 3.5-14, which is similar to article 3.51-6, provides as follows:

> Each insurer, nonprofit hospital service plan corpora-tion . . . , health maintenance organization . . . , employer, multiple employer, union, association, trustee, or other self-funded or self-insured welfare or benefit plan, program, or arrangement that issues group health insurance policies, enters into health care service contracts or plans, or provides for group health benefits, coverage, or services in this state for hospital, medical, or surgical expenses incurred as a result of accident or sickness *shall offer and make available to each group policyholder, contract holder, employer, multiple employer, union, association, or trustee* under a group policy, contract, plan, program or arrangement that provides hospital, surgical, and medical benefits, coverage for services and benefits on an expense-incurred, service or prepaid basis for expenses incurred for the necessary care, diagnosis, and treatment of serious mental illnesses.

*Id.* art. 3.51-14, § 2(a) (emphasis added). As with section 3A of article 3.51-6, this provision does not require that the offer for coverage of expenses incurred in the treatment of serious mental illness be made to the employee. Rather, article 3.51-14 requires a single-employer, self-funded plan to offer coverage to the employer.

---

[6]Attorney General Opinion JM-937, in describing the salient points of article 3.51-6, stated:

> First, coverage for in vitro fertilization procedures is mandated only if the insurance policy also provides pregnancy-related benefits. Art. 3.51-6, § 3A(a). Second, coverage in such instances need be made available only to the same *extent* that coverage is provided for pregnancy-related procedures. *Id.* § 3A(d). Third, benefits for in vitro fertilization procedures may be limited to persons who have specified pre-existing medical conditions. *Id.* § 3A(e). . . . Thus, a group policyholder may avoid the requirement to provide coverage for in vitro fertilization procedures by . . . ending *all* coverage for *any* pregnancy-related condition . . . .

Attorney General Opinion JM-937 at 4. The opinion also cautioned that the federal Pregnancy Discrimination Act may limit an employer's ability to limit pregnancy-related medical benefits. *Id.* at 4-5.

Finally, you also ask whether article 20.12 of the Insurance Code, sections 3.3701 through 3.3705 of title 28 of the Texas Administrative Code, and section 161.091 of the Health and Safety Code apply to "an employer-controlled entity which has arranged for a select group of providers at preferred rates to be available to contracting employers."

Article 20.12 of the Insurance Code prohibits group hospital service corporations subject to chapter 20 from engaging in certain activities. Article 20.01, which describes the corporations which are subject to chapter 20, provides that

> [a]ny seven (7) or more persons, a majority of whom are superintendents of hospitals or physicians or surgeons licensed by the State Board of Medical Examiners, upon application to the Secretary of State of the State of Texas for a corporate charter may be incorporated for the purpose of establishing . . . a nonprofit hospital service plan, whereby hospital care may be provided by said corporation through an established hospital . . . .

The entity which you describe is subject to article 20.12 of the Insurance Code only if it is comprised of seven or more persons, the majority of whom are hospital superintendents, physicians or surgeons, incorporated for the purpose of providing hospital care at a hospital.

Sections 3.3701 through 3.3705 of title 28 of the Texas Administrative Code apply to preferred provider plans. Section 3.3701 expressly provides that "[t]he sections of this subchapter do not apply to nor do they sanction any plan arranged or provided for by any provider, employer, union, third-party entity, or any person or entity other than an insurer authorized to engage in the business of health insurance in this state." 28 T.A.C. § 3.3701. Therefore, an entity is subject to these regulations only if it is an insurer authorized to engage in the business of health insurance in Texas.

Section 161.091 of the Health and Safety Code was recently amended by the 73rd Legislature to prohibit "[a] person" from "intentionally or knowingly offer[ing] to pay or agree[ing] to accept any remuneration directly or indirectly, overtly or covertly, in cash or in kind, to or from any person, firm, association of persons, partnership, or corporation for securing or soliciting patients or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency." Health & Safety Code § 161.091(a), *as amended by* Acts 1993, 73d Leg., ch. 573, § 5.01, at 2171 *and* ch. 706, § 1, at 2772. The term "person" in section 161.091 of the Health and Safety Code includes a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Attorney General Opinion DM-138 (1992) at 1 n.1 (citing Gov't Code § 311.005(2)). Subsection (f) of section 161.091 of the Health and Safety Code provides that it does not apply to a variety

of entities, including governmental entities, which reimburse, provide, offer to provide, or administer medical benefits under a health benefits plan for which it is the payor. Therefore, if the entity you describe is a governmental entity which reimburses, provides, offers to provide, or administers medical benefits under a health benefits plan for which it is the payor, it is not subject to section 161.091.

## S U M M A R Y

Article 1.24C, article 3.51-9, and article 21.53 of the Insurance Code apply to single-employer, self-funded plans. These provisions are not preempted by the federal Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 - 1461, ("ERISA") as they apply to "governmental plans" as defined by title 29, section 1002(32) of the United States Code.

Under article 3.51-6, section 3A of the Insurance Code, a single-employer, self-funded plan must make the offer of coverage for in vitro fertilization procedures to the employer. Article 3.51-14 requires a single-employer, self-funded plan to offer coverage of expenses incurred in the treatment of serious mental illness to the employer.

An entity is subject to article 20.12 of the Insurance Code only if it is comprised of seven or more persons, the majority of whom are hospital superintendents, physicians or surgeons, incorporated for the purpose of providing hospital care at a hospital. An entity is subject to sections 3.3701 through 3.3705 of title 28 of the Texas Administrative Code only if it is an insurer authorized to engage in the business of health insurance in Texas. A governmental entity which reimburses, provides, offers to provide, or administers medical benefits under a health benefits plan for which it is the payor is not subject to section 161.091 of the Health and Safety Code.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General